THE COMMISSIONERS OF THE COUNTY OF BURKE v. THE COMMISSIONERS OF THE COUNTY OF BUNCOMBE.

*Paupers—Settlement—Pleading—Sufficient Cause of Action— Demurrer—When not Necessary to Plead Statute.*

1. The liability of a county for the support of a pauper does not depend upon the law of *domicile* or *citizenship*, but upon that of *residence* or *settlement*, as prescribed in § 3544 *The Code.*

2. Where the complaint alleged that one M. was a resident and citizen of the county of B., and was an inmate of the almshouse, having been duly committed ; that while suffering from a fit of insanity she escaped, wandered into an adjoining county, where she was taken charge of by the authorities, and being unable to give any account of herself, was cared for by the last named county as a pauper for several years and until her restoration, when she was returned to the county of B., and demanded payment for her support for that period : *Held*, (1) That M. had acquired a settlement in the county of B.; (2) that the complaint stated a sufficient cause of action against the county of B., and (3) that it is never necessary that the pleadings shall set out a public statute.

This is a CIVIL ACTION, which was tried before *MacRae, J.,* upon complaint and demurrer at February Term, 1888, of BUNCOMBE Superior Court.

The following complaint was filed :

1. That in and during the year 1880, one Rosanna Meadows was a resident and citizen of the county of Buncombe, in the State of North Carolina, and during a part of the year 1880 was an inmate of the almshouse of said county of Buncombe, having been sent there and being there under lawful authority as an inmate.

2. That on or about the ____ day of _____, 1880, the said Rosanna Meadows, while suffering from a fit of insanity, escaped from said almshouse of Buncombe County, where she had a right to be, and wandered to the county of Burke, in which said county she was arrested and committed to

jail of said county under a charge of insanity. That at the time of her arrest, the said Rosanna Meadows was insane—could give no account of herself, or where she came from, and had no means of support. No one knew her, and the plaintiffs, the Board of Commissioners of Burke· County, had her sent to the almshouse of Burke County, and had her cared for, fed, clothed therein from time she was arrested, on the 3d day of August, 1880, up to and until about the 5th day of July, 1886, when the said Rosanna Meadows came to her senses and told where she. came from, and who she was; and she was at once returned by the plaintiffs, or under their order, to the defendants, the County Commissioners of Buncombe County, who received her.

3. That during all the time that Rosanna Meadows was an inmate of the almshouse of Burke County, from about the 3d day of August, 1880, to the 5th day of July, 1886, she was unable to give any account of herself—where she was from, or where her home was—and plaintiffs, all this time, were trying to find out something about her, and where her home was, but in vain, until she came to her mind as above stated, about the 5th of July, 1886, when she was immediately returned to her home in Buncombe County.

4. That the plaintiffs made application to have her taken into the Western Carolina Insane Asylum as an inmate, and did what they could to get her admitted, but the application was refused and said Rosanna Meadows refused admittance.

5. That the plaintiff Commissioners of Burke County expended in taking care of, feeding and clothing the said Rosanna Meadows while she was an inmate of the almshouse of said county of Burke, the sum of five hundred and nine dollars and twenty-five cents, of which sum four hundred and seventy-nine dollars and twenty-five cents is for board of the said Rosanna Meadows for the period of five years and eleven months, at six dollars and seventy-five

cents per month, and twenty-five dollars is for clothing, and five 'dollars is for costs of attempting to get her into the asylum for the insane. All of which said sum is due to the plaintiff from the defendant, as appears from the paper marked '·Exhibit A," which is herewith filed, and asked to be taken as a part of this complaint, showing the account and warrant upon which the said Rosanna Meadows was arrested.

6. That said account for the sum of five hundred and nine dollars and twenty-five cents has been presented to the defendant Board of Commissioners of Buncombe County by the plaintiff Board of Commissioners of Burke County, and payment thereof demanded, which has been refused, and defendant refusing to pay the same or any part thereof.

Wherefore, plaintiffs pray judgment for the sum of five hundred and nine dollars and twenty-five cents, and interest on the same, for costs of action, and for such other and further relief as may be appropriate.

To this complaint the defendant demurred, for that:

1. That it does not state that Rosanna Meadows, prior to the time of her arrest in Burke County, was last legally settled in Buncombe County, or that she was a poor person, likely to become a charge to Burke County, or that she was arrested and committed to the almshouse of the county last named to prevent her from becoming a charge thereto, or that any steps were taken, as required by law, to have her removed to the county where she was last legally settled, or that she was sick or disabled, and could not be removed to such county without danger of life.

2. It not only does not state that Buncombe County was the county where the said Rosanna Meadows was last legally settled, but it shows that the said Rosanna Meadows resided continuously in Burke County from August 3d, 1880, till

about the 5th day of July, 1886, whereby she became legally settled in said county of Burke, and a proper charge to that county.

3. It does not state or show that Buncombe County is liable, under any law of the State, to reimburse or pay Burke County or the plaintiffs for the maintenance and support of the said Rosanna Meadows in the almshouse or elsewhere in said last named county.

Wherefore, the defendant demands judgment for costs.

There was judgment sustaining the demurrer, and the plaintiff appealed.

*Mr. John Gray Bynum,* for the plaintiff.
*Mr. Chas. A. Moore,* for the defendant.

Davis, J. (after stating the case.) Section 707, subsection 21, of *The Code,* confers upon the County Commissioners authority to provide for the maintenance of the poor. Section 3540 does not differ materially from section 707, subsection 21, and the Commissioners have authority " to institute proceedings against any person coming into the county who is likely to become chargeable thereto, and to cause the removal of such person to the county where he was last legally settled, and to recover, by action, from the said county all charges and expenses whatever incurred for the maintenance or removal of such poor person."

Section 3545 provides more in detail the manner in which paupers shall be " removed to their settlements," and " if such poor person be sick or disabled, and cannot be removed without danger of life, the Board of Commissioners shall provide for his maintenance and cure at the charge of the county, and after his recovery shall cause him to be removed and pay the charges of his removal, and the county wherein he was last legally settled shall repay all charges occasioned by his sickness, maintenance, cure and removal," &c.

It thus provides that the Board of Commissioners of the county to which such poor person belongs shall receive and provide for him, under a penalty for refusal to do so, and makes them liable, if they "shall refuse to pay the charges and expenses" mentioned in the section.

Section 3544 provides, among other things, that "every person who shall have resided continuously in any county for one year shall be deemed legally settled in that county." We have been favored with an interesting argument upon questions of domicile, citizenship and residence, and many authorities have been cited by counsel, but the law applicable to pauper "settlements" is regulated by statute, and is in no way governed by the law of domicile or citizenship.

There is no change of domicile by removal of residence without an accompanying *intent*, and one does not lose his domicile by change of residence simply—there must be an intent to abandon the old and acquire the new—and no length of time is necessary to constitute the change, nor will any length of residence affect the change if the intent be wanting.

It is manifestly the purpose of the law in regard to pauper settlements to charge each county with the support of its own poor, and the liability of the county in relation thereto is controlled, not by domicile, but by settlement. *State* v. *Elam*, Phil., 460.

In *Neal* v. *Commissioners of Burke*, 85 N. C., 420, Hoke C. Secrest, a citizen of Union County, in passing through Burke County, was charged with the murder of his wife. He afterwards became insane, and was sent, by an order of the Judge, to the asylum. His *settlement* was not in Burke, and it was held that the cost of sending him to the asylum, being no part of the costs of the prosecution, the county of Burke was not chargeable therewith. The county of his *settleemnt* was liable for that charge. The case does not state

how long it was from the time of arrest to the time when he was sent to the asylum, but the facts apparent show that it was much more than one year, and while one year's *residence* will create a new settlement, it is manifest that a confinement for one year under legal process does not constitute such a *residence* as is contemplated by the statute. A legal settlement is a right which a pauper may "acquire," so as to entitle him to be supported as a pauper, by a residence of twelve months. It is clear that Rosanna Meadows was not in a condition to lose or acquire any rights. Being insane, she could do no act by which she could lose or gain a settlement. As an unfortunate person, she was entitled to support, and how and at whose expense this should be, is regulated by the statute, and this must be by the county where she was "last legally settled." In what county was she "last legally settled"? Do the facts alleged in the complaint, if admitted, sufficiently show that it was in the county of Buncombe?

The facts stated are not as concise or as definite as they might have been, but they are stated with sufficient clearness to leave no doubt as to what "the cause of action" is or as to the relief demanded. Undoubtedly they are sufficiently stated to enable the defendant to answer intelligently and make any defence that it may have to the plaintiff's demand. *Nance* v. *Railroad,* 94 N C., 619.

Every fact necessary to constitute a claim against the county of Buncombe for the money expended in the maintenance of Rosanna Meadows is substantially stated; and the first ground of demurrer cannot be sustained.

Though it appears from the complaint that Rosanna Meadows was continuously in Burke County from August 3d, 1880, to July, 1886, it also appears that during that time she was cared for in the almshouse of that county, and the facts in relation thereto are clearly stated, and as we have

seen, do not constitute such a residence as is contemplated by the statute in section 3544; and the second ground of demurrer cannot be sustained.

It is sufficient, if the complaint states *facts* constituting a cause of action, and it is not necessary to set out in the complaint any public statute or law; and the third ground of demurrer cannot be sustained.

The Court below erred in sustaining the defendant's demurrer.                                                   Error.