STATE v. BASKERVILLE.

(Filed April 10, 1906).

*Police Courts — Jurisdiction — Constitutional Law — Con-
struction.*

1. Section 27, Article 4, of the Constitution, conferring jurisdiction
   on justices of the peace, is so modified by section 14 of the same
   article as to authorize and empower the Legislature to establish
   special courts in cities and towns and give them exclusive juris-
   diction of misdemeanors committed within the corporate limits
   of the same.

2. The Act of 1895, chapter 36, section 13, in so far as it confers ex-
   clusive jurisdiction on the police court of the city of Raleigh,
   of any and all violations of the city ordinances committed within
   the corporate limits, is a constitutional exercise of legislative
   power.

3. Construction by cotemporaneous legislation in matters of doubtful
   import, while not controlling, should be received as an aid to
   correct decision.

4.  An act of the Legislature will never be declared unconstitutional unless it plainly and clearly appears that the General Assembly has exceeded its powers.

5.  In case of ambiguity, the whole Constitution is to be examined in order to determine the meaning of any part, and the construction is to be such as to give effect to the entire instrument and not to raise any conflict between its parts which can be avoided.

INDICTMENT against Sarah Baskerville, heard on appeal from a justice of the peace, by *Judge M. H. Justice* and a jury, at the September Term, 1905, of the Superior Court of WAKE.

Defendant, on warrant duly issued, was tried, convicted and sentenced in a court of a justice of the peace of Raleigh Township, for violating a valid ordinance of the city, and thereupon appealed to the Superior Court, contending that the justice of the peace had no jurisdiction to try the case. The cause coming on for hearing in the Superior Court, defendant moved to dismiss for want of jurisdiction. Motion overruled and defendant excepted.

Defendant admitting that on the facts she was guilty, if the court had jurisdiction, the verdict was so entered, sentence imposed and defendant excepted and appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*J. C. L. Harris & Son* for the defendant.

HOKE, J., after stating the case: In chapter 36, section 13, Private Laws 1905, the Legislature established a police court for the city of Raleigh and defined its jurisdiction as follows:

(A) Exclusive original jurisdiction over all offenses arising from the violation of the provisions of this act, or of all violations of ordinances, by-laws, rules and regulations of the board of aldermen made in pursuance of this act,

STATE v. BASKERVILLE.

within the corporate limits of the city of Raleigh and within
Raleigh Township.

(B) Jurisdiction, power and authority for the trial and
determination of all misdemeanors created by the laws of
the State of North Carolina committed within the corpor-
ate limits of the city of Raleigh and within Raleigh Town-
ship.

In the case before us the defendant was tried and con-
victed before a justice of the peace of a misdemeanor in
violating a lawful ordinance of the city of Raleigh. The
act in question gives exclusive jurisdiction of such offenses
to the police justice, and if the act is valid the justice of
the peace who tried and sentenced the defendant was with-
out jurisdiction of the case, and the motion of the defend-
ant should have been allowed.

The sections of our Constitution in Article IV bearing
on the question now before us, are as follows: Article 4,
section 2, provides that "The judicial power of the State
shall be vested in a Court for the trial of Impeachments, a
Supreme Court, Superior Courts, Courts of Justices of the
Peace, and such other courts inferior to the Supreme Court
as may be established by law."

Section 12. "The Geneal Assembly shall have no power
to deprive the judicial department of any power or jurisdic-
tion which rightfully pertains to it as a co-ordinate depart-
ment of the government; but the General Assembly shall
allot and distribute that portion of this power and jurisdic-
tion which does not pertain to the Supreme Court among
the other courts prescribed in this Constitution or which may
be established by law, in such manner as it may deem best;
provide also a proper system of appeals and regulate by
law when necessary, the methods of proceeding in the exer-
cise of their powers, of all courts below the Supreme Court,
so far as the same may be done without conflict with other
provisions of this Constitution."

Section 14. "The General Assembly shall provide for the establishment of special courts, for the trial of misdemeanors, in cities and towns, where the same may be necessary."

And section 27, so far as pertinent to this case, provides that the several justices of the peace shall have jurisdiction of the criminal matters arising within those counties where the punishment cannot exceed a fine of fifty dollars or imprisonment for thirty days.

In *Rhyne v. Lipscombe,* 122 N. C., 650, *et seq.,* the Legislature had created a Criminal Circuit Court embracing several Western counties; had given same, to a certain extent, concurrent jurisdiction with the Superior Courts in that portion of the State, providing, among other things, that an appeal would lie in certain cases from a justice of the peace to said Criminal Court and from this court, direct to the Supreme Court, and the Supreme Court, in substance, decided:

(1) "The Superior Courts and Courts of Justices of the Peace were created by the Constitution (sec. 2, Article IV), and the General Assembly cannot abolish them.

(2) "While the General Assembly may, under section 12 of Article IV of the Constitution, allot and distribute the jurisdiction of the courts below the Supreme Court, it must be done without conflict with other provisions of the Constitution.

(3) "In construing legislation establishing courts inferior to the Supreme Court and affecting the jurisdiction of the Superior Courts, the term 'Superior Court' must be interpreted in the sense it had at the time of the adoption of the Constitution which established such court, which was that it was the highest court in the State next to the Supreme Court and superior to all others, from which alone appeals lay direct to the Supreme Court, and possessed of general jurisdiction, criminal as well as civil, and both in law and equity.

(4) "The Superior Court cannot, under section 12, Article IV of the Constitution, be deprived of the pre-eminence and superiority attaching to it at the time of its adoption by the Constitution or shorn of either its criminal or civil jurisdiction without conflict with the constitutional provisions creating it; and while its jurisdiction may be made largely appellate by conferring such part of its original jurisdiction on such inferior courts as the General Assembly may provide, its jurisdiction must be retained by original or appellate process.

(5) "The allotment and jurisdiction provided for in section 12 of Article IV of the Constitution, cannot be such as to take from justices of the peace the jurisdiction conferred by section 27 of such article, or to repeal the right of appeal given by that section, both in criminal and civil actions, to the Superior Court from the courts of justices of the peace."

The court thereupon held the statute unconstitutional in so far as it was in conflict with these principles. In that case the Supreme Court was only considering the relative position, as to power and jurisdiction, of the Superior Courts as part of our judicial system, and the right of such courts alone to hear appeals from justices of the peace. The jurisdiction of the justices' courts, as established by section 27 of Article IV, was only incidentally in question, and was only considered in so far as the same was affected by section 12 of Article IV, conferring power on the Legislature to "allot and apportion the jurisdiction which does not pertain to the Supreme Court among the other courts prescribed by this Constitution, or which may be established by law in such manner as it may deem best  *  *  *  so far as this may be done without conflict with other provisions of this Constitution."

Section 14 of this article which confers on the General Assembly the power to provide for the establishment of

special courts for the trial of misdemeanors, in cities and towns, was in no way involved in the decision of *Rhyne v. Lipscombe,* nor was the effect of this section, as affecting the jurisdiction of justices of the peace, in any wise determined. While some expressions in the opinion gave intimation to the contrary, the decision is only authority and precedent on the material facts then before the court, established or accepted as true. *Cooper v. Railroad,* 140 N. C., 209. Accordingly the opinion of the court in *State v. Lytle,* 138 N. C., 738, written by the present *Chief Justice,* who also wrote the opinion in *Rhyne v. Lipscombe,* treats this point as an open question, and the same is now presented for our consideration.

This section 14, providing for the establishment of special courts for the trial of misdemeanors in cities and towns, was *in ipsissimus verbis* in the Constitution of 1868 as section 19, and there has been no change, constitutional or otherwise, which restricts or tends to restrict the power therein granted. Soon after the promulgation of the Constitution of 1868, there were acts creating courts under this section, which gave to the chief officers of the towns, where established, exclusive jurisdiction of certain misdemeanors arising from violation of their own municipal regulations, and while no case perhaps necessarily raised the question directly, this was the construction put upon these acts by the court, and such construction was then accepted without question. *State v. White,* 76 N. C., 15; *State v. Threadgill, ibid.,* 17.

It is a familiar principle that construction by cotemporaneous legislation in matters of doubtful import, while not controlling, should be received as an aid to correct decision, and it is proper that these acts should be so considered here. And while, in *State v. Wood,* 94 N. C., 855, the court rendered a decision having a different effect, this was put expressly on the ground that the act itself had been so changed,

and not from any lack of power in the Legislature to confer the exclusive jurisdiction.   The reason is thus stated by _Ashe, J._: "And it was this provision in the second section of the act—'shall be subject to the provisions of this act'— that led this court to decide in _Threadgill's_ and _White's cases, supra,_ that the mayor or chief officer of a city or town had exclusive jurisdiction of violations of the ordinances of cities or towns, of which they were chief officers.   But when the Act of 1871 was carried forward into The Code, the words, 'and shall be subject to the provisions of this chapter,' were omitted, so that the section read, 'Any person violating an ordinance of a city or town shall be guilty of a misdemeanor and shall be fined, not exceeding fifty dollars or imprisoned not exceeding thirty days.'   There are no restrictive words.   The very terms of the enactment are such as to confer jurisdiction upon justices of the peace, and our opinion is, under this section of The Code, the justice of the peace had jurisdiction and it was error to quash the warrant on that ground."

In _Town of Washington v. Hammond,_ 76 N. C., 33-37, _Bynum, J.,_ delivering the opinion of the court, said (at p. 37): "It is clear beyond doubt, that as the Act of 1871-72 has established special courts in cities and towns, as is authorized by the Constitution as it was and as it is now amended (Art. IV, sec. 25), the General Assembly has the power to vest in these courts original and final jurisdiction over all misdemeanors whatever.   Whether it would not be a most beneficial and economical jurisdiction, if extended to the mayors of the principal and most populous cities and towns of the State, thus relieving the ·Superior Courts of a mass of business, which in some counties has engrossed the whole time of the regular terms of the courts and has been the subject of much complaint, is an inquiry which we cannot pursue."

And it has also been held that the Constitution, in giving

the Legislature the right to establish these courts "where the same may be necessary," also gave the right, when such courts are properly organized and equipped for the purpose, to confer upon them such power and jurisdiction over all misdemeanors committed within the corporate limits as may be adequate and necessary to their proper and efficient operation. *State v. Pender,* 66 N. C., 313. In this case *Rodman, J.,* said: "The words 'provide for the establishment of,' are very wide, and it seems to us that they not only admit of, but that they cannot receive their full and adequate force, without giving them the interpretation that they authorize the Legislature to establish the courts in any way it may think proper, and to give the judge such power (not exceeding the trial of misdemeanors), and to provide for them and the other officers of the court (if any), such mode of election and such terms and emoluments of office as it may think proper." And in the same opinion, at page 319, it is said: "From the language of section 19 of Article IV (and it is by its language only that we can be guided), we think the leading idea in that was to give the Legislature full power over the establishment of special courts, thus making it an exception to the general provision in section 10 of Article III. This is necessary in order to give to the words their full and adequate force."

It is well established that an act of the Legislature will never be declared unconstitutional unless it plainly and clearly appears that the General Assembly has exceeded its powers. *Sutton v. Phillips,* 116 N. C., 502; *State v. Lytle, supra.* It is also an accepted canon of construction that in case of ambiguity the whole Constitution is to be examined in order to determine the meaning of any part and the construction is to be such as to give effect to the entire instrument and not to raise any conflict between its parts which can be avoided. Black on Interpretation of Laws, p. 17, clause 10, citing Cooley Const. Lim., p. 58, and *Manly v. State,* 7

Md., 135. And the same idea is expressed by our court in *State v. Pender, supra,* where the judge says: "It is the duty of the courts of this State, and one which the court has endeavored faithfully and impartially to perform, to give to the Constitution such an interpretation as will harmonize all of its parts, and without violating any leading idea in it as a whole."

From the principles here stated and the decisions of our own courts, from the language of the Constitution itself, and considering the two sections together and giving to each its proper effect, we think it a correct deduction and hold it to be the law that:

(a) Section 27, Article IV, conferring jurisdiction on justices of the peace, is so modified by section 14 of the same article as to authorize and empower the Legislature to establish special courts in cities and towns and give them exclusive jurisdiction of misdemeanors committed within the corporate limits of the same.

(b) That the act in question, in so far as it confers exclusive jurisdiction on the police court of the city of Raleigh, of any and all violations of the city ordinances committed within the corporate limits, is a constitutional exercise of legislative power.

(c) That the justice of the peace who tried this cause had no jurisdiction, and the judgment against the defendant must be arrested.

It may be well to note that the Superior Court, having only appellate jurisdiction, the case necessarily is made to depend on the jurisdiction of the trial justice, and has been so considered. *State v. Lachman,* 98 N. C., 763.

Judgment Arrested.